IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUSTIN T. GIBSON,

                Plaintiff,

    v.

SUNBELT RENTALS, INC., JLG INDUSTRIES, INC.,
OSHKOSH CORPORATION, THE TRAVELERS
INDEMNITY COMPANY OF CONNECTICUT, and      OPINION and ORDER
ANTHEM BLUE CROSS BLUE SHIELD,

                                         21-cv-808-jdp

                Defendants,

    v.

J.H. FINDORF & SON, INC.,

                Third-party defendant.

---

This lawsuit arises out of plaintiff Justin T. Gibson's injuries from using a boom lift while doing construction work at the Pope Farm Conservancy in Middleton, Wisconsin. Gibson alleges that the boom lift shot up unexpectedly, crushing him between the boom lift and a joist that was above him. Gibson alleges that defendants JLG Industries Inc. and its parent company, defendant Oshkosh Corporation, were negligent in designing and manufacturing the boom lift and in failing to properly instruct their customers on safe usage. Gibson also alleges that defendant Sunbelt Rentals, Inc. was negligent in renting the boom lift without taking reasonable steps to ensure it was safe to use under the circumstances. Defendants The Travelers Indemnity Company and Connecticut and Anthem Blue Cross Blue Shield are Gibson's insurers.

JLG removed the case from state court, relying on 28 U.S.C. § 1332 as the basis for subject matter jurisdiction. But under § 1332, the plaintiff and defendants must be citizens of

different states, and JLG acknowledges that Gibson, Oshkosh and Anthem are citizens of Wisconsin. So JLG moves to dismiss Oshkosh as fraudulently joined and to realign Anthem as a plaintiff. Gibson moves to remand the case to state court and for attorney fees and costs under 28 U.S.C. § 1447(c).

For the reasons explained below, the court concludes that JLG hasn't met its burden to show fraudulent joinder, so the court will remand the case to state court under § 1447(c). But JLG had a reasonable basis for removal based on the information that it had at the time, so the court will deny Gibson's motion for fees and costs.

ANALYSIS

## A.  Legal standard

The doctrine of "fraudulent joinder" represents an exception to the general rule that federal courts may not exercise jurisdiction over a case raising solely state-law claims when a plaintiff and defendant are citizens of the same state.[1] *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). The defendant has the "heavy burden" to show that the doctrine applies, *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992), and it can meet that burden in two ways. First, the defendant can show that the plaintiff has misstated the jurisdictional facts, such as the citizenship of the parties. *See Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). In this case, it is undisputed that Gibson, Oshkosh, and Anthem are Wisconsin

---

[1] The term "fraudulent joinder" is a misnomer because the doctrine requires neither fraud nor joinder. *Schur v. L.A. Weight Loss Centers, Inc.,* 577 F.3d 752, 763 n.9 (7th Cir. 2009). But the Court of Appeals for the Seventh Circuit continues to use the term, so this court will do so as well.

citizens. But JLG does contend that Gibson has misstated jurisdictional facts in a sense by naming Anthem as a defendant rather than a plaintiff.[2]

Second, and more commonly, the defendant can show that the plaintiff's claim against the nondiverse defendant is simply too weak to prevent the exercise of federal jurisdiction. *See Walton*, 643 F.3d at 999. JLG is relying on this method to obtain dismissal of Oshkosh. JLG says that it is solely responsible for designing and manufacturing the boom lift at issue in this case and that Oshkosh can't be held liable simply because it is JLG's parent company.

The standard for showing fraudulent joinder under the second method is open to some interpretation. In *Poulous*, the court stated that the question is whether the "claim against an in-state defendant . . . simply has no chance of success." 959 F.2d at 73. The court then elaborated as follows:

> The defendant must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant. At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?"

*Id.* (emphasis in original). The court did not explain what it meant when it said that the court must resolve "all issues . . . of law" in favor of the plaintiff, but the court cited *B., Inc. v. Miller Brewing Co.*, which stated that "the district court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." 663 F.2d 545, 549 (5th Cir. 1981).

---

[2] In its reply brief, JLG says that Anthem should also be dismissed because Anthem "conceded in state court pleadings that [it is] not a proper party." Dkt. 25, at 2. But Anthem made that assertion in state court *after* this case was removed to federal court when the state court no longer had jurisdiction. *See* Dkt. 26-1. Anthem hasn't sought dismissal in this court, and Gibson hasn't conceded that Anthem should be dismissed, so the court declines to consider that issue.

The court of appeals has repeated the *Poulos* standard or minor variations of it in numerous cases. *See, e.g.*, *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015); *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013); *Schur*, 577 F.3d at 764. But the court of appeals has provided less guidance on how to apply that standard.

In *Poulos*, the court focused primarily on the plaintiff's complaint, even though the state-court proceedings had advanced to the summary judgment stage at the time of removal, and the court appeared to apply a standard similar to failure to state a claim. The court wrote: "Poulos failed to state any claim against [the nondiverse defendant] . . . Based on the allegations in his complaint, Poulos had no chance of recovering damages from [the nondiverse defendant] in a Wisconsin court." However, the court also noted that "at no point in the state or federal proceedings did Poulos attempt to fill the gaps in his complaint." *Id.*

In *Schur*, the court observed that "some courts, including district courts within this circuit, have suggested that the burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." 577 F.3d at 764. But the court of appeals didn't expressly adopt that view or explain how it was different from the Rule 12(b)(6) standard.

The court of appeals has also considered facts outside the complaint in some cases. For example, in *Faucett v. Ingersoll-Rand Mining & Machine Co.*, 960 F.2d 653, 654–55 (7th Cir. 1992), the court concluded that the defendant met its burden by submitting an uncontradicted affidavit that it had nothing to do with the incident at issue. This court has also concluded that "the court may look beyond the complaint." *See Stampfli v. PACCAR, Inc.*, No. 17-cv-751-wmc, 2018 WL 2298356, at *4 (W.D. Wis. May 21, 2018).

Synthesizing the case law, this court will summarize its understanding of the fraudulent joinder standard. The court first looks at the allegations in the complaint to determine not simply whether the court believes that the complaint states a claim against the nondiverse defendant but whether there is a "reasonable possibility" that a state court would conclude that the complaint states a claim. The court of appeals applied this standard in *Schwartz v. State Farm Mut. Auto. Ins. Co.* when it concluded that removal was proper because there was "not a reasonable possibility based on current Indiana law and the facts before us" that Indiana state courts would adopt the plaintiff's legal theory. 174 F.3d 875, 878 (7th Cir. 1999). The view is also consistent with the requirement in *Poulos* to resolve uncertainties in state law in the plaintiff's favor and with later observations that the question is whether the plaintiff's claim is "utterly groundless," *Walton*, 643 F.3d at 999, which is another way of saying that no reasonable jurist would find merit in the claim. *See also Stampfli*, 2018 WL 2298356, at *4 ("[T]he court should deny remand only if the claims asserted against the nondiverse defendant are wholly insubstantial and frivolous." (internal quotation marks omitted)). The court may also consider any evidence that the plaintiff has submitted to supplement the allegations in the complaint. *Ests. of Briney ex rel. Clay v. Mr. Heater Corp.*, No. 08-cv-701-bbc, 2009 WL 1009793, at *3 (W.D. Wis. Apr. 13, 2009) (collecting cases).

If the plaintiff's allegations and evidence don't satisfy the above standard, then the court must dismiss the nondiverse defendant and retain jurisdiction. But if the plaintiff's submissions are sufficient, then the defendant must come forward with evidence showing that the plaintiff has "no chance of success" against the nondiverse defendant. *Polous*, 959 F.2d at 73. If the evidence is disputed, or if the defendant's evidence isn't sufficient to meet its burden, then the case must be remanded to state court. *See Stampfli*, 2018 WL 2298356, at *4 (remand

required unless the defendant presents "uncontroverted summary evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to a plaintiff under applicable state law").

## B. Merits

JLG must show that both Anthem and Oshkosh are improper defendants. If any defendant is a citizen of the same state as Gibson, there is no jurisdiction under § 1332. *See Smart v. Local 702 Intern. Broth. of Elec. Workers*, 562 F.3d 798, 803 (7th Cir. 2009).

The court agrees with JLG that Anthem should be aligned as a plaintiff rather than a defendant. Gibson named Anthem solely because it "paid certain health insurance claims on his behalf." Dkt. 33, ¶ 15. This court has repeatedly held that a subrogated insurer's interests are aligned with the plaintiff's interests because both parties hope to obtain the maximum recovery possible. *See, e.g., Angell v. Walmart, Inc.*, No. 21-cv-736-jdp, 2022 WL 35714, at *1 (W.D. Wis. Jan. 4, 2022); *Krause v. Wal-Mart Stores, Inc.*, No. 19-cv-786-jdp, 2019 WL 5310680, at *1 (W.D. Wis. Oct. 21, 2019). Gibson says that Wisconsin law allows a subrogee to be joined as either a plaintiff or a defendant, but even if that is correct, it doesn't matter. The question before the court is whether the case was properly removed to *federal* court, so it's the federal rules regarding alignment that apply. Anthem would be a plaintiff in federal court, so its presence in the lawsuit wouldn't destroy diversity.

But the court concludes that JLG hasn't satisfied the standard for fraudulent joinder on Gibson's claim against Oshkosh, so the court will grant Gibson's motion to remand. Gibson's sole claim against Oshkosh is negligence. Dkt. 33, ¶¶ 89–93. Gibson says that Oshkosh was negligent in numerous ways, including in the design and manufacture of the boom lift, failing to adequately test it, and failing to provide adequate warnings or instructions. *Id.*, ¶ 93. Gibson

explains in his brief that his legal theory rests on *Miller v. Bristol-Myers Co.*, in which the court held that a parent company could be sued by its subsidiary's employees for injuries sustained from a fire at the subsidiary's facility because the parent had provided advice to the subsidiary about fire safety at the facility. 168 Wis. 2d 863, 887, 485 N.W.2d 31, 40 (1992). Gibson isn't a JLG employee, but Gibson says that the logic of *Miller* isn't limited to employees because it is based on Restatement (Second) of Torts § 324A (1965), which applies to any third person who performs a service that it doesn't have a duty to perform. The court understands Gibson to contend that it is reasonable to infer either that Oshkosh itself negligently designed the boom lift or that Oshkosh can be held liable under *Miller* and § 324A because it gave guidance to JLG regarding the design or manufacture of the boom lift or the instructions and warnings to provide.

To support its negligence claim against Oshkosh, Gibson alleges that Oshkosh was "directly involved in the design, engineering and/or development of the subject/or boom lift and associated safety devices and/or warnings" and that Oshkosh "exercised dominion and control over the day-to-day business activities of defendant JLG Industries, Inc." Dkt. 33, ¶¶ 91–92. Gibson also relies on the following information from outside the complaint:

- statements from Oshkosh that it designs and manufactures the equipment sold under the JLG brand, Dkt, 19, at 6–7;

- testimony from an Oshkosh representative that Oshkosh may be involved in the design of JLG-branded products, *id.*, at 8;

- Oshkosh's ownership of all JLG's patents, *id.*;

- the overlap in JLG and Oshkosh's executive leadership, including that Oshkosh's head of access equipment is the president of JLG, *id.* at 9;

- the requirement on JLG to obtain approval from Oshkosh to make major business decisions that could affect JLG's value, *id.*;

- statements from Oshkosh executives on earnings calls that Oshkosh was redesigning JLG products and that Oshkosh had the ability to ramp up manufacturing output at JLG, *id.* at 10.

The requirements for pleading a negligence claim are not onerous. For example, an allegation that "the defendant, on a specified date, negligently drove a motor vehicle against [the] plaintiff who was then crossing an identified highway" is sufficient to state a claim. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084–85 (7th Cir. 2008) (internal quotation marks omitted). The plaintiff doesn't have to explain how the defendant was negligent. *Id.* In a products liability case, the plaintiff need not identify a specific defect in the complaint. *Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010). Court have adopted these liberal standards in part because the defendant often has exclusive possession of the information relevant to showing negligence. *See id.*

In this case, Gibson's claim against Oshkosh is far from a slam dunk. He doesn't point to specific evidence that Oshkosh was directly involved in manufacturing or designing the boom lift or that Oshkosh was giving instructions to JLG on how to handle potential safety issues with the boom lift. But specific evidence isn't needed at the pleading stage. All Gibson needs are allegations that raise his claim above the level of speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 30, 356 Wis. 2d 665, 680, 849 N.W.2d 693, 701 ("*Twombly* is consistent with our precedent.").

Gibson's allegations are sufficient to meet that standard. He alleges directly that Oshkosh was involved in designing the boom lift, and he cites Oshkosh's own statements that they design JLG products. He also alleges that Oshkosh is deeply involved in JLG's operations, controlling production and approving important decisions. That is enough to show that

8

Gibson's claim is based on more than just speculation and that there is reasonable possibility that a state court would accept his argument under *Miller* and § 324A at the pleading stage.

JLG hasn't met its burden to refute Gibson's allegations. Most of its brief is devoted to arguing that Gibson hasn't adequately alleged that it is proper to pierce the corporate veil. But Gibson isn't asking the court to hold Oshkosh liable for JLG's alleged negligence; he is asking the court to proceed on a claim that Oshkosh itself was negligent. JLG doesn't even address Gibson's theory under *Miller* and § 324A. By failing to explain why there is no reasonable possibility that a Wisconsin state court would conclude that Gibson's allegations are sufficient under the authority he cites, JLG has forfeited the issue.

JLG relies on the affidavit of Patrick Taverna, associate general counsel for Oshkosh, in an attempt to show that any claim against Oshkosh has no chance of success. Dkt. 3, ¶ 1. The affidavit includes the statements that "Oshkosh Corporation had no role in the manufacturing, design, or sale of the subject JLG boom lift that is the subject of this lawsuit" and that "Oshkosh Corporation does not oversee, engage in, or dominate the day-today business practices of JLG Industries, Inc." *Id.*, ¶¶ 11–12. But Taverna provides no foundation for either of those conclusory statements, and it isn't clear why a lawyer for the company would have personal knowledge of these issues. *See Watson v. Lithonia Lighting,* 304 F.3d 749, 751–52 (7th Cir. 2002) (affiant must explain how he knows the information he is testifying about). In any event, Taverna admitted in his deposition that he doesn't know whether Oshkosh designed any of the components in the boom lift at issue in this case. Dkt. 20 (Taverna Dep. 113:4–13). So the Taverna affidavit doesn't meet JLG's "heavy burden" to show that Gibson has "no chance of success" on his claim against Oshkosh.[3]

---

[3] JLG submitted a new Taverna affidavit with its reply brief, *see* Dkt. 27, but the court has

JLG also says that proof of fraudulent joinder is shown by nine other lawsuits filed by Gibson's counsel in which the plaintiffs in those cases sued JLG but not Oshkosh. This argument was raised for the first time in JLG's reply brief, and JLG identifies only one of these lawsuits. *See* Dkt. 25, at 6. Regardless, even if JLG is correct that suing Oshkosh was a tactical decision, this court has held that "a litigation strategy intended to defeat jurisdiction, by itself, does not support a finding of fraudulent joinder." *Irish v. BNSF Ry. Co*., No. 08-cv-469-slc, 2009 WL 276519, at *8 (W.D. Wis. Feb. 4, 2009). In other words, the court doesn't consider the plaintiff's motives. All that matters is that the plaintiff has pleaded enough facts to state a claim, and the defendant hasn't conclusively shown that the plaintiff can't prevail. That standard is met in this case, so the court will deny JLG's motion to dismiss Oshkosh and grant Gibson's motion to remand.

## C.  Request for fees

Gibson moves for fees and costs under 28 U.S.C. § 1447(c), which permits a district court remanding a case to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has interpreted this to mean that a court may award fees and costs only if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp*., 546 U.S. 132, 138, 141 (2005). The court of appeals has provided further guidance, stating that a district court generally shouldn't award fees unless "clearly established law demonstrated that [the defendant] had no basis for removal." *Lott v. Pfizer, Inc*., 492 F.3d 789, 793 (7th Cir. 2007).

---

disregarded it because a party can't rely on new evidence in a reply brief. *See Black v. TIC Investment Corp.,* 900 F.2d 112, 116 (7th Cir. 1990). In any event, like the initial affidavit, the new affidavit provides no foundation for any of Taverna's averments.

Gibson hasn't met that standard. As already discussed, JLG was correct to contend that Anthem was improperly aligned. As for Oshkosh, at the time JLG filed its notice of removal, JLG reasonably believed based on the allegations in the original complaint that Gibson was relying on a theory that Oshkosh was liable simply because it was the parent company of JLG. That would require Gibson to show not just control over JLG, but also that JLG "had at the time no separate mind, will or existence of its own" and that Oshkosh used its control over JLG "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights." *Consumer's Co-op. of Walworth Cnty. v. Olsen*, 142 Wis. 2d 465, 484, 419 N.W.2d 211, 217–18 (1988). It wasn't until after removal that Gibson elaborated on the allegations in his complaint and articulated his theory under *Miller* and § 324A. Gibson doesn't contend that he can meet the *Olsen* standard, and he cites no authority showing that it was clearly established that removal was improper.

The court declines to award fees or costs.

11

ORDER

IT IS ORDERED that:

1.  Defendant JLG Industries, Inc.'s motion to dismiss defendant Oshkosh Corporation, Dkt. 1 is DENIED, and JLG's motion to realign Anthem Blue Cross Blue Shield, Dkt. 1, is DENIED as moot.

2.  Plaintiff Justin T. Gibson's motion to remand the case to state court, Dkt. 23, is GRANTED. The case is REMANDED to the Dane County Circuit Court under 28 U.S.C. § 1447(c) because this court lacks subject matter jurisdiction.

3.  Gibson's motion for fees and costs, Dkt. 23, is DENIED.

Entered July 13, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

12